## AKRON TAXICAB CO v DAWSON

Ohio Appeals, 9th Dist, Summit Co

No 2002. Decided March 17, 1932

Naef & McIntosh, Akron, for plaintiff in error.

Rockwell, Grant, Thomas & Buckingham, Akron, for defendant in error.

PER CURIAM:

As to which of said automobiles entered said intersection against the red light, there was a very sharp conflict in the evidence; and while, on that question, if the members of this court were sitting as a jury, we might find differently than the jury did, we are of the opinion that the finding of the jury is not so manifestly against the weight of the evidence as to justify us in interfering therewith. Moreover, there were other charges of negligence against the driver of the taxicab, as to which there is less doubt as to whether the evidence supports the finding of the jury, so that we are clearly of the opinion that the judgment is not manifestly against the weight of the evidence.

The other errors of law which it is claimed occurred at the trial are:

First, "excessive examination of prospective jurors regarding insurance company connection."

When the jurors were interrogated, no objections were made, but the question was attempted to be saved by a motion made before the jurors were sworn.

We do not deem it necessary to detail what is shown in the record in reference to this claim, but assuming that the question was properly saved, we find no indication that the questions were asked in bad faith or for any ulterior or improper purpose, and it is sufficient for us to say that, under the law as announced by the Supreme Court and by this court, we find that there was no prejudicial error in reference to said matter.

Second, it is claimed that prejudicial statements were made by counsel for plaintiff in his opening statement to the jury. Counsel stated that he expected the evidence to show certain acts of said taxicab driver shortly before the taxi reached said intersection, and when it was sought to introduce such evidence, the court sustained objections thereto.

When counsel made said statement, and objection was made thereto, the court announced that the purpose of the statement was to enable the attorneys to tell the jury what they expected to prove, and the court said to the jury:

"Whether or not it is admissible will be determined by this court at a proper time, and the jury is instructed now, as you will be later instructed, that the only purpose of this statement is to tell what the attorneys expect to prove in this case. When you consider this case, you will consider only the evidence you hear from the witness stand and apply the law that this court gives you to the evidence that you hear from the witness stand, and upon that determine your decision. You will only decide the case on the evidence."

When, during the trial, questions were asked concerning said matter, the court sustained objections and did not permit the evidence to be introduced, and no request was made for any further instruction on the matter, and we find no evidence of bad faith on the part of the attorney making the opening statement. Our judgment is that there was no prejudicial error in reference to said matter.

Third, it is claimed that the court erred in rejecting testimony of the witnesses offered by the taxicab company in contradiction of the testimony of Ethel S. Dawson concerning the question of whether or not she had been married to Mr. Dawson and later obtained a divorce from him.

When this testimony was offered by the taxicab company, it was not relevant or competent for any purpose except as bearing upon the credibility of Mrs. Dawson as a witness. Without setting forth the circumstances which the trial judge considered in determining whether or not he would permit such evidence to be introduced, we are

of the opinion that he did not abuse his discretion in determining that question.

But if we should find that he did abuse his discretion, we would have difficulty in finding that the taxicab company was prejudiced by said ruling, considering all of the facts disclosed by the record; and fourth, we find no reversible error in the court's making such ruling in chambers and not permtting the evidence to be offered in open court.

We think that the trial judge was called upon to exercise a sound discretion in reference to said matter at the time it was presented to him, and considering all the facts and circumstances as disclosed by the record, we do not think that the court abused its discretion or that the taxicab company was prejudiced by what the court did.

Fifth, it is claimed that there was error in the charge of the court in reference to the effect of a failure to call certain witnesses on behalf of the taxicab company.

The driver of the taxicab was not called as a witness, and there was no evidence offered which in any way explained his absence; neither was there any evidence which affirmatively showed that he was within reach and available, and there was nothing relating to that subject except the fact that at the time of the accident he was living and working in Akron, from which it might be inferred that such a situation continued and obtained at the time of the trial; and in the general charge of the court, at the request of counsel for Mrs. Dawson, the court instructed the jury that—

"In weighing the effect of the evidence actually introduced, you may presume that the testimony of the driver of this taxicab, if introduced, would not have been favorable to the cause of the defendant, in the event that you find, by a preponderance of the evidence, that this taxicab driver is within reach and available. If you do not find that he is within reach and available, you will not consider his absence."

Previous to said charge, and during the argument of counsel for Mrs. Dawson, her counsel requested the court to charge upon that subject, and, over objection, was permitted to read to the jury, as well as to the court, from a reported case as follows:

"Where a party fails to call a person as a witness, whom he would naturally be expected to call, and who is within reach, it may be inferred that the testimony of this witness, had it been given, would have been unfavorable to the party who failed to call him."

In response to said request, the court then announced as follows:

"I am familiar with that rule of law, and the rule of law is applicable if the witness is within reach and available. As far as the record in this case is concerned, I will submit that to the jury later on as a question of fact, whether or not the taxicab driver was within reach and available."

A fair statement of the rule seems to be:

"Where the nonproduction of evidence in a jury case occurs under such circumstances that the judge, if trying the case without a jury, would deem himself justified in drawing an adverse inference from the failure to produce the evidence, the practice is not to charge the jury that there is a presumption against the party, but to instruct that the jury are at liberty to draw an unfavorable inference against the party if they think it warranted under all the circumstances. The use of the term 'presumption' will not, however, be fatal to the instruction if the context shows that it was used in the sense of an inference which the jury were at liberty to draw."

10 R.C.L., "Evidnece," §38.

The specific complaint made in reference to this matter is set forth in the brief of counsel for the taxicab company as follows:

"It will be noted that the request of Mr. Rockwell was not for a charge with reference to the driver alone, but to all witnesses who might be available and were not called, and this should have applied as much to the plaintiff's witnesses as to the defendant's witnesses.

"The testimony shows that plaintiff was first treated by Dr. Rankin, and later by Dr. Parks, and that Dr. Selby took some x-ray pictures showing plaintiff's condition, and also was treated by some chiropractor unnamed; and, so far as the record shows, these witnesses were available for the plaintiff and were not called, and the rule as to absent witnesses should have been applied by the court to all witnesses, both for plaintiff and defendant, and the court should not have picked out the driver as being the only one to whom this rule should apply."

Later, at the request of plaintiff, the court extended the same rule to apply to Dr. Smith, who had examined Mrs. Dawson in reference to the extent of her injuries.

During these proceedings, counsel for the taxicab company sat by without objecting,

and made no suggestion that there were any other witnesses to whom the rule might properly be applied, and made no request that it be applied to Dr. Rankin, Dr. Parks or Dr. Selby, or to some unnamed chiropractor, although the court asked counsel for the taxicab company if they had any propositions of law which they desired the court to give to the jury; and after the court had made the following announcement, "Ladies and gentlemen of the jury, you may have this case," the attorney for the taxicab company merely excepted "to the general charge given after argument as a whole and to each and every part thereof." Under the circumstances hereinbefore set forth, we find no prejudicial error in the proceedings of the court in reference to said matter.

Sixth, it is urged that the charge regarding damages was too broad and included expenses which plaintiff had waived during the trial.

During the trial the court specifically instructed the jury that Mrs. Dawson had withdrawn any claim for certain damages, specifying them, and that the jury should not consider any of the testimony on those subjects; and then, in the general charge, the court, without again enumerating the items of damage which had been withdrawn, called the attention of the jury to the fact that they had been withdrawn, and instructed the jury that they should not be considered.

Under these circumstances, we are of the opinion that there was no likelihood of the jury's misunderstanding the court, and no possibility that the jury included said withdrawn items of damage in the verdict, simply because the court instructed them that if they found in favor of Mrs. Dawson it would be their duty "to award to her such a sum in damages as will fairly and fully compensate her for the damages you find to have been sustained by her." No claim is made that the damages awarded were excessive.

Finding no prejudicial error in the record, the judgment will be affirmed.

PARDEE, PJ, WASHBURN and FUNK, JJ, concur.

ON APPLICATION FOR REHEARING

Decided April 1, 1932

PER CURIAM:

It is apparent from the application filed by the plaintiff in error for a rehearing in this case, that counsel feel that the court did not give sufficient consideration to the third error complained of, and that possibly the court was not familiar with the facts in reference to said matter, as shown by the record in the case. The brief manner in which that matter was disposed of in the opinion of the court, may be some justification for the feeling of counsel for plaintiff in error, but we are glad to be able to say that we did understand the facts and that we did give the question thorough consideration.

While the opinion in reference to said matter if brief, we think it actually covers all of the contentions made by counsel; but we are glad to amplify our conclusions so briefly expressed in the former opinion of the court.

The record discloses that Ethel S. Dawson sued the taxicab company to recover for injuries received by her while a passenger in one of the taxicabs of the company, and that in her petition, as one item of her damages, she alleged that she had incurred "indebtedness for hospital care and attention, nurses, ambulance service, x-ray service, medical and surgical care and attention and medicines, in the sum of $516."

There was no issue in the pleadings as to whether or not Ethel Dawson had been married, or whether at the time of the injuries she had a husband, and if she had, whether she was living with him, and therefore, under the allegation that she incurred the hospital indebtedness, it was immaterial whether or not she had a husband, because, under the statute, she had a perfect right to incur said bill upon her own credit and responsibility, and if she did, she was liable therefor, and if she was liable therefor, such expense would be a proper item of damages which she could recover against the taxicab company. There was no evidence introduced even tending to prove that, if she had a husband, said hospital care was furnished under such circumstances as would make him liable therefor, and in fact, the record shows that if she had a husband, she had not lived with him for several years before the accident and that he had nothing whatever to do with the furnishing of such hospital care, and there is no evidence that the bill for said care was charged to him or that the service was furnished upon his credit, or that those who furnished it had any knowledge of his existence; in short, under the record in this case, if Ethel Dawson had a right to recover at all, she had a right to recover for said hospital care.

During the examination of prospective

jurors, counsel for the taxicab company asked Ethel Dawson what her husband's name was, and she answered, "A. R. Dawson. We are divorced"; and then she was asked if she knew where he was, and she answered that she did not know, but that she thought he lived in Akron. Then, when Ethel Dawson was a witness in her own behalf, her counsel asked her if she was divorced from her husband, and she answered that she was, and that she had been so divorced "for almost four years." Then, on cross-examination, counsel for the taxicab company cross-examined her at great length as to when and where she was married to Dawson, and when and where she was divorced from him. Then, upon the defense, the taxicab company called the man to whom she claimed she had been married, and he testified that he had never been married to her nor divorced from her, but upon cross-examination he admitted that he had taken her to his parents' home in Maryland, where she had testified they were married, and had there occupied the same bedroom with her, and the circumstances were such, as shown by his own testimony, as to plainly justify the inference that his mother was led to believe that they were married, and he also admitted that later he lived with Ethel Dawson and her father in Akron under circumstances calculated to plainly give the impression that they were married, and admitted that he took his sister to the home of Ethel Dawson's father, where she remained for some time and where she was visited by his mother, and that while said visit was in progress, he occasionally stayed at said home over night and occupied the same room with Ethel Dawson, under circumstances which again justified the inference that they were married. As has been said, he testified that they never were married, and of course were never divorced.

Then counsel for the taxicab company offered a witness who had examined the records in Cuyahoga County, where Ethel Dawson had testified she had been divorced, and offered to prove by said witness that the records did not show any such divorce being granted, and an objection to such testimony was sustained. Later in the case, counsel for the taxicab company made known to the court that the clerk of courts of Cuyahoga county was present, and that they desired to offer the testimony of such clerk to show that no divorce was granted in that county, and thereupon, in a conference in the chambers of the court, at which counsel for both sides were present, counsel for Ethel S. Dawson withdrew any claim for said hospital bill, and the trial judge announced that he would sustain the objection to any evidence being offered to show that no divorce was granted, and announced that he would not permit the formal offer of such evidence in open court, and proper exceptions were taken to the court's rulings.

Our course, it cannot be expected that we can describe all that occurred at the trial in such a way as to set forth all of the circumstances which the trial judge considered in determining whether or not he would permit such evidence to be introduced, but in disposing of this question in the opinion we merely stated our conclusion to be that "we are of the opinion that he did not abuse his discretion in determining that question." We are of that opinion still, and we are also of the opinion that it was a matter of discretion; that the question of Ethel S. Dawson's marriage or divorce was never a material issue or matter in the case; that if she was married, it did not affect in any way her right to recover the amount of said hospital bill; and that proof that she was not divorced was not relevant or competent for any purpose except as bearing upon her credibility. Said matter was first called to the attention of the jury by the taxicab company and was pursued by it to such an extent as to have a tendency to draw the minds of the jurors away from the real issues in the case; and, considering all of the circumstances of the case, we are of the opinion that the court did not abuse its discretion in refusing to permit further evidence in reference to said matter.

The general rule is that the limit to which a party may go in introducing evidence not relevant to the issues in the case but affecting the credibility of a witness or of a party who testifies as a witness in his own behalf, rests in the sound discretion of the court trying the cause, and that the judgment will not be reversed for error in that regard unless it appears from the record that such discretion has been abused to the prejudice of the complaining party.

A consideration of the testimony of the supposed husband and all of the facts and circumstances shown by the record, lead us to the conclusion that the taxicab company was not prejudiced by the fact that the court ruled upon said matter in chambers, nor by the refusal of the court to hear further testimony on such matter, and that, on the contrary further testimony on the subject would probably have had a tendency to prejudice the taxicab company.

The application for a rehearing is denied.

PARDEE, PJ, WASHBURN and FUNK, JJ, concur.